UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE

MICHAEL DAVIS,

          Debtor.
_____/

STATE OF FLORIDA DEPARTMENT OF
REVENUE,

          Appellant,

v.                    Case No.  8:10-cv-2216-T-33
                        Bankr. No. 8:08-bk-4348-MGW

MICHAEL DAVIS,

          Appellee.
_____/

## ORDER

This matter comes before the Court pursuant to the State of Florida, Department of Revenue's Appeal of the Bankruptcy Court's August 23, 2010, "Order on Debtor's Motion for Entry of Supplemental Injunction and for Sanctions for Violation of Discharge Injunction Against State of Florida, Department of Revenue--Child Support Enforcement." (B.R. Doc. # 371). In that Order, the Bankruptcy Court "enjoined and prohibit[ed] the State and Maryanne Davis, and any persons acting by or through either of them, including their agents or attorneys, from directly or indirectly enforcing or attempting to enforce the Claim against the Debtor." Id. at 2. As will be discussed, the "Claim" was asserted by the State against Michael Davis for allegedly unpaid child

support obligations after confirmation of Mr. Davis's Chapter 11 Bankruptcy Plan.[1]

This Court has considered the briefs of the parties (Doc. ## 7, 17, 18), the State's Notice of Supplemental Authority (Doc. # 19), and the record below and reverses the Bankruptcy Court's Order for the reasons that follow.

I.   <u>Factual Background</u>

A.   <u>Dissolution of Marriage and Domestic Support Obligations</u>

On February 10, 1997, a Final Judgment of Dissolution of Marriage between Maryanne Davis and Michael Davis was entered in Cook County, Illinois. (B.R. Doc. # 316-1).  Incorporated by reference into that Final Judgment was an agreement between Maryanne Davis and Michael Davis containing various domestic support obligations concerning the two Davis children. (B.R. Doc. # 316-2).  On October 20, 2003, the Cook County court entered an order relinquishing jurisdiction to the domestic relations courts of the State of Florida, and the Bankruptcy record contains an order dated August 14, 2008, from the Pinellas County, Florida, Domestic Relations Court domesticating a foreign judgment. (B.R. Doc. # 316-4).

---

[1] "The Florida [Department of Revenue] is the Florida state agency charged with enforcing and collecting child support obligations established in another state." <u>In re Diaz</u>, Case No. 10-14475, 2011 U.S. App. LEXIS 15462, at *3, n.1 (11th Cir. July 27, 2011)(citing Florida Statute Section 409.2557).

**B.**   **The Bankruptcy Case**

On March 31, 2008, an involuntary Chapter 11 bankruptcy case was filed naming Mr. Davis as the debtor. (B.R. Doc. # 1).  The Bankruptcy Court compelled Mr. Davis to "be a part of the Chapter 11 process." (B.R. Doc. # 318 at 32).  On August 4, 2008, the Bankruptcy Court issued an order "Fixing Time for Filing Proofs of Claim, Scheduling Hearing on Approval of Disclosure Statement and Confirmation of Plan, and Establishing Plan and Disclosure Statement Filing Deadlines." (B.R. Doc. # 70).  Therein, the Bankruptcy Court established September 29, 2008, as the Claims Bar Date. Id. at 1.  Mr. Davis filed his bankruptcy Schedules and Statement of Financial Affairs on August 21, 2008, listing a disputed claim in the amount of $184,000.00 for the payment of child support on Schedule E (Creditors Holding Unsecured Priority Claims), naming the Florida Department of Revenue Child Support Enforcement agency on Schedule F (Creditors Holding Unsecured Nonpriority Claims) for "Notice purposes" only, and listing a possible claim against his ex-spouse, Maryanne Davis, for overpayment of child support on Schedule B (Personal Property). (Doc. # 88 at 4, 13, 14, 18).

Mr. Davis filed his initial Chapter 11 Plan on October 3, 2008, (B.R. Doc. # 113) and filed an Amended Chapter 11 Plan on March 24, 2009. (B.R. Doc. # 225).  The Bankruptcy Court confirmed the Amended Chapter 11 Plan on May 20, 2009 (B.R. Doc. 278).  Among

other salient provisions, the Bankruptcy Court's confirmation order states, "Confirmation of the Plan immediately effectuates the discharge of the Debtor and any and all debts, claims, and demands against the Debtor, whether the subject of filed claims or not. The Court specifically finds cause for the entry of an immediate discharge under Section 1141(d)(5)(A)." (B.R. Doc. # 278 at 5, ¶ 4).

### C.   Post-Confirmation Proceedings

The State of Florida and Maryanne Davis, both having actual notice of the bankruptcy case (including the Claims Bar Date and confirmation of the Plan), did not participate in the bankruptcy case. They did not file any proofs of claim prior to the Claims Bar Date, and they did not participate in any of the hearings leading up to the Plan confirmation. As explained by the Bankruptcy Court, "During the pendency of the Chapter 11 case, Maryanne Davis, for whatever reason, did not participate. She had been originally listed in the Debtor's schedules, had been noticed of the bankruptcy. No one contests that issue. The Department of Revenue similarly had been notified about the pendency of the case." (B.R. Doc. # 318 at 33).

After the passage of the September 29, 2008, Claims Bar Date and after the May 20, 2009, confirmation of the Chapter 11 Plan, the State filed a proof of claim (Claim 10) on June 1, 2009,

against Mr. Davis in the amount of $180,000.00 for past due child support payments.  Mr. Davis objected to the late-filed Claim.

The Bankruptcy Court held a preliminary hearing on Mr. Davis's objection to the Claim on August 5, 2009.  There, Mr. Davis argued that the confirmed Chapter 11 Plan determined that he owes no child support payments: "[T]here's a provision in the plan, Section 6.2, that says that failure to file a claim by the bar date shall constitute an adjudication on the merits of the Debtor's lack of liability, without the need for further objection or court order." (B.R. Doc. # 317 at 6).  In essence, Mr. Davis asserted that res judicata and collateral estoppel barred the late-filed child support Claim. Id. at 6-7.

The State, on the other hand, argued: "The State admits the claim is time-barred, it was filed late.  For purposes of payment in the plan, not for purposes of determining its dischargeability, because pursuant to the Code, child support is nondischargeable under any circumstance, ever.  They can't be discharged by magic wording in a plan." (B.R. Doc. # 317 at 11).

The Bankruptcy Court determined that further briefing and oral argument was needed and set the matter for oral argument.[2]  At the October 5, 2010, oral argument, the Bankruptcy Court determined that it had "jurisdiction over the Debtor's objection to the claim,

---

[2] Mr. Davis's brief was filed at (B.R. Doc. # 308) and the State's brief was filed at (B.R. Doc. # 316).

under 28 U.S.C. § 1334 and consideration of the objection is a core matter under 28 U.S.C. § 157(b)(2)(B), which deals with the allowance or disallowance of claims." (B.R. Doc. # 318 at 34).  The Bankruptcy Court framed the issue presented as:

> [W]hether or not . . . Maryanne Davis may sit basically on the sidelines and the Department of Revenue with her, and allow the entire Chapter 11 to be prosecuted through conclusion, and only then file a claim after the plan has been confirmed, after, literally hundreds of - or over 200 court entries and many court hearings considering all of the debtor's finances, and then come in after all of that has transpired and belatedly file a claim, taking the position that since child support obligations are nondischargeable there was in essence no need to participate in the [Chapter] 11, that they could come along later and file a claim and seek to enforce it outside the Bankruptcy Court.

(B.R. Doc. # 318 at 37).

The Bankruptcy Court answered the question in the negative and disallowed the Claim for child support as untimely filed. Id. at 44. The Bankruptcy Court followed its oral ruling with a written order dated October 21, 2009: "The Court concludes that the Debtor has no liability for Claim 10." (B.R. Doc. # 356).

Thereafter, the State attempted to collect child support monies from Mr. Davis. Mr. Davis "felt as if the State was clearly acting directly contrary to the plan" and was "dumbfounded." (B.R. Doc. 379 at 9). Mr. Davis filed a motion for an injunction against the State, and the Bankruptcy Court held a hearing. (B.R. Doc. # 379). During the hearing, Mr. Davis took the position that the Bankruptcy Court "disallowed the claim with prejudice and found

pursuant to the confirmed plan that the Debtor simply has no liability for the claim." (B.R. Doc. # 379 at 10). Mr. Davis further argued that the State's attempt to collect child support was "a violation of the plan," a violation of the Bankruptcy Court's prior orders, and that a "supplemental injunction making it clear that the claim cannot be sought against the Debtor" was needed. Id. at 12.

The State, on the other hand, asserted that its child support claim cannot be discharged in bankruptcy and framed the issue as: "Does . . . the release of Debtor from liability on a claim [in bankruptcy], release the Debtor from a nondischargeable debt for child support?" Id. at 13.

The Bankruptcy Court ruled in favor of Mr. Davis as follows:

> [R]ightly or wrongly, this Court adjudicated that on notice to the claimant, made a finding that . . . . there was no liability, and that's the ruling of this Court. To turn around and then ignore that ruling and go back into State court, is a violation of this Court's confirmation order, and the process by which these claims are adjudicated.

Id. at 36.   The Bankruptcy Court determined that the plan barred the Claim for child support under the doctrine of res judicata because "the plan operated as an adjudication on the merits of" the child support Claim. Id. at 37.   The Court ruled that no further action could be taken in State court "to enforce the Debtor's liability for the amounts that this Court concluded were not owed, as set forth in Claim No. 10." Id.

The State appealed the Bankruptcy Court's injunction order. Three months after the parties fully briefed this Court as to the merits of the bankruptcy appeal, the State filed its Notice of Supplemental Authority (Doc. # 19), containing the Eleventh Circuit's decision in In re Diaz, Case No. 10-14475, 2011 U.S. App. LEXIS 15462 (11th Cir. July 27, 2011), which is dispositive of the issue presented on appeal.

## II.  **Standard of Review**

Upon entry of a final order by the bankruptcy court, a party may appeal to the district court pursuant to 28 U.S.C. § 158(a). The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). This Court reviews de novo the legal conclusions of the bankruptcy court. In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993).

The standard of review employed by this Court in reviewing the bankruptcy court's findings of fact is the clearly erroneous standard of review described in Federal Rule of Bankruptcy Procedure 8013: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." See In re Thomas, 883 F.2d 991, 994 (11th Cir. 1989). A finding of fact is clearly erroneous when, "although there is evidence to

support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." <u>Crawford v. Western Elec. Co., Inc.</u>, 745 F.2d 1373, 1378 (11th Cir. 1984)(citing <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364 (1948)).

The issue presented on appeal is purely a legal one:

> [Whether] [t]he Bankruptcy Court's injunction is improper in that its effect is to enjoin domestic relation proceedings in a State court and does not meet one of the three, narrow, statutory exceptions which allow a federal court to enjoin state court proceedings under 28 U.S.C. § 2283, The Anti-Injunction Act.

(Doc. # 7 at 2).

## III. <u>Analysis</u>

"[D]omestic support obligation[s]" are nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(5). The Court underscored the nondischargeability of domestic support obligations, including child support obligations, in <u>United Student Aid Funds, Inc. v. Espinosa</u>, 130 S. Ct. 1367, 1379 at n.10 (2010), where it noted that such obligations "are *not* dischargeable under *any* circumstances." (Emphasis in original).

The parties agree that domestic support obligations are nondischargeable in the context of a Chapter 11 bankruptcy case. However, in this case, the Bankruptcy Court determined that Mr. Davis's domestic support obligations were zero, disallowed the State's $180,000.00 Claim against the bankruptcy estate for child support payments (post-plan confirmation), and then barred the

State from pursuing its Claim against Mr. Davis in State Court domestic relations proceedings.[3]

The Court determines that it is necessary to reverse the Bankruptcy Court's injunction against the State based upon the recent Eleventh Circuit case of In re Diaz, Case No. 10-14475, 2011 U.S. App. LEXIS 15462 (11th Cir. July 27, 2011), which is on point and binding. In the Diaz opinion (which had not been issued when the Bankruptcy Court made its legal ruling now appealed), the Eleventh Circuit curtailed the bankruptcy court's powers to enjoin or sanction domestic support obligation creditors in the context of child support collection actions in State court after the entry of a discharge order in bankruptcy court.

Specifically, the Diaz court reversed a bankruptcy court's imposition of sanctions against the State and reversed a district court's order affirming the bankruptcy court, holding: "[W]e easily conclude that the bankruptcy court's discharge order did not discharge Diaz's child support obligation. Therefore, the Florida [Department of Revenue] . . . could not have violated the discharge injunction by pursuing Diaz for child support after discharge." 2011 U.S. App. LEXIS 15426, at *32.

---

[3] The Bankruptcy Court did not impose sanctions against the State at the August 4, 2010, hearing, but stated: "I will not at this point order any sanctions unless there is a violation of this order. Of course, if this order is reversed on appeal, then I'll be governed accordingly." (B.R. Doc. # 379 at 37).

Although <u>Diaz</u> was a Chapter 13 case and the present case is a Chapter 11 case, the Court sees no reason to limit the Eleventh Circuit's holding to Chapter 13 cases.  The <u>Diaz</u> court explained that "disallowance of a claim and nondischargeability are separate issues.  Although a creditor whose claim is disallowed may not collect from the bankruptcy estate, disallowance of a claim does not necessarily discharge the underlying debt and eliminate the debtor's personal liability outside of bankruptcy." <u>Id.</u> at *33 (internal quotation marks and citations omitted).

In the present case, the Bankruptcy Court disallowed the State's Claim and then enjoined the State from attempting to collect the child-support monies from Mr. Davis in the State court. Under <u>Diaz</u>, the Bankruptcy Court's injunction order was entered in error.  As stated in <u>Diaz</u>, Congress made child-support obligations nondischargeable because "payment of child support is more important than a debtor's financial 'fresh start.'" <u>Id.</u> at *40. The <u>Diaz</u> court also warned, "If bankruptcy courts could fix a debtor's personal liability for child-support through rulings on a claim objection or confirmation of a [bankruptcy] plan, this would often result in de facto modification of state child-support orders. Federal courts have no business becoming embroiled in state domestic relations to such a degree." <u>Id.</u> at *39, n.16 (citing <u>Carver v. Carver</u>, 954 F.2d 1573, 1579 (11th Cir. 1992)("Nor was it the intent of the new Bankruptcy Code to convert the bankruptcy

courts into family or domestic relations courts--courts that would, in turn, will-nilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child-support obligations of debtors.")(internal citations omitted)).

As explained in In re Newman, 402 B.R. 908, 912 (Bankr. M.D. Fla. 2009), "failure to object to confirmation of the [d]ebtor's Chapter 11 Plan does not affect [a claimant's] ability to collect [a] nondischargeable . . . liabilit[y] after confirmation of the Plan." Although Newman is a tax case, the Court determines that its holding concerning nondischaregable tax liabilities is persuasive in the context of nondischargeable child-support obligations. See also Wetmore v. Markoe, 196 U.S. 68, 76 (1904)("[I]t was not the intention of Congress, in passing a bankruptcy act, to provide for the release of a father from his obligation to support his children by his discharge in bankruptcy . . . The obligation continues after discharge in bankruptcy as well as before.").

Under Diaz, this Court determines that "res judicata and collateral estoppel do not preclude the Florida DOR . . . from arguing the extent of [the debtor's] personal liability for child support post-bankruptcy." Id. at *39.[4]   This is because child-

_____

[4] In In re Smith, Case No. 95-42950, 2011 Bankr. LEXIS 3183, at *7, n.4 (Bankr. N.D. Ala. Aug. 23, 2011), the court commented on
(continued...)

support obligations are nondischargeable in Chapter 13 as well as in Chapter 11 bankruptcy cases.[5]  In so holding, the Court does not determine that Mr. Davis actually owes the child-support payments as argued by the State.  Rather, this Court holds that the State should not have been enjoined from presenting the issue of Mr. Davis's possible child-support obligations in the State court, even

---

[4](...continued)
the holding of Diaz: "Perhaps the most remarkable holding in Diaz was that a bankruptcy court's determination of the *amount* of a child-support obligation owing by a debtor is not binding in a post-discharge state court proceeding.  According to the Eleventh Circuit, while a bankruptcy court may determine the amount of a support obligation to be paid in a [T]itle 11 proceeding, that determination does not preclude a party from again challenging the amount of that obligation in a post-discharge state court enforcement . . . proceeding--in other words, issue preclusion, a/k/a collateral estoppel, is not applicable.  After reading Diaz, one must conclude that a discharge granted in bankruptcy court within the Eleventh Circuit does not under any circumstance discharge the unpaid principal of, or interest on a domestic support obligation, whether that obligation--principal or interest --arose pre- or post petition, pre- or post discharge, or in a pre- or post-BAPCPA case, and the bankruptcy court's determination of the amount of that obligation is not binding post-discharge in state court contempt proceedings."

[5] In Diaz, the court explained, "Although a discharge under Chapter 13 is broader than the discharge received in any other chapter, Chapter 13 nevertheless restricts or prohibits entirely the discharge of certain types of debts [including child-support obligations]."  2011 U.S. App. LEXIS 15462, at *30.  If, under the broadest discharge available under Chapter 13, child-support obligations cannot be discharged, it is reasonable to assume that child-support obligations cannot be discharged in the context of a Chapter 11 case.  Section 523 of the Bankruptcy Code, which lists nondischargeable debts, applies to both Chapter 13 and Chapter 11 bankruptcy cases.

after the Bankruptcy Court entered its order confirming Mr. Davis's Chapter 11 Plan.[6]

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED** that:

(1)  The Bankruptcy Court's Order dated August 23, 2010, barring the State and Maryanne Davis from enforcing a child support claim against Michael Davis in State Court (B.R. Doc. # 371) is **REVERSED.**

(2)  The Clerk is directed to transmit a copy of this Order to the Bankruptcy Court and, thereafter, **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>13th</u> day of September, 2011.

*Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

---

[6] Because the <u>Diaz</u> opinion bars the injunction entered, it is not necessary to address the Anti-Injunction Act arguments presented by the parties in their appellate briefs. In addition, the Court notes that the parties never presented arguments concerning the Anti-Injunction Act in the Bankruptcy case. Accordingly, the Court questions whether a discussion of the Anti-Injunction Act would be prudent in this Order. <u>See</u> <u>McGinnis v. Ingram Equip. Co.</u>, 918 F.2d 1491, 1495 (11th Cir. 1990)("A general principle of appellate review is that an appellate court will not consider issues not presented to the trial court. . . . We may, however, in the exercise of our discretion consider issues not presented in the trial court when a pure question of law is involved and a refusal to consider it would result in a miscarriage of justice.")(internal citations omitted).

-14-

Copies:
counsel of record
The Honorable Michael G. Williamson, United States Bankruptcy Judge